UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LIGON,<br>           Plaintiff,<br>    v.<br>JOE LAFUACI, et al.,<br>           Defendants. | Case No. 13-cv-02875-RMW<br><br>**ORDER ON MOTIONS IN LIMINE**<br><br>Re: Dkt. Nos. 36, 37, 38, 39, 40, 41, 42, 50, 51, 52, and 53 |

**I.  PLAINTIFF'S *IN LIMINE* MOTIONS**

<u>**Motion *in limine* No. 1:**</u> **To exclude evidence or reference to plaintiff's criminal history and prior contacts with law enforcement.**

**GRANTED IN PART**. Under Fed. R. Evid. 609(a)(1)(A), Plaintiff's April 26, 2010 drug distribution felony conviction must be admitted on the issue of plaintiff's credibility subject to Fed. R. Evid. 403. For the following reasons, the court finds that Rule 403 concerns preclude the admission of the felony conviction on the issues related to liability as the prejudicial effect is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; *see United States v. Bagley*, 772 F.2d 482, 487 (9th Cir. 1985). First, the incident at issue in this case is wholly unrelated to the prior conviction. *See Tate v. Union Oil Co. of California*, 968 F. Supp. 308, 311 (E.D. La. 1997) (finding prior criminal conviction of personal injury plaintiff inadmissible under 403 in part because prior conviction was unrelated to accident at issue). Second, the jury will know of plaintiff's felonious misconduct in evading arrest prior to the incident.  With that in mind, the additional impeachment value of plaintiff's prior felony conviction is minimal. Accordingly, because plaintiff's unrelated drug distribution conviction provides minimal probative impeachment value and poses significant risk of prejudicing or confusing the jury as to the issues in this matter, it is excluded.

However, if plaintiff claims a loss of earnings or earnings potential his criminal record would be admissible to show that his ability to work and obtain a good paying job would be impaired. If any of the prior convictions is admitted, the court may need to formulate an instruction on its limited purpose.

**Motion *in limine* No. 2: To exclude evidence of plaintiff's probationary status at the time of the incident**

**GRANTED with reservation**. Plaintiff's probationary status is not relevant to the appropriate level of force unless plaintiff testifies as to why he did not pull over. If he does, his probationary status may suggest that he was trying to get away to avoid the consequences of violating probation.

**Motion *in limine* No. 3: To exclude reference to plaintiff's no contest plea and felony conviction from 2010**

**GRANTED IN PART**. *See* plaintiff's motion *in limine* #1.

**Motion *in limine* No. 4: To exclude testimony of expert Darrell L. Ross**

**GRANTED IN PART**. A police practices expert may only testify as to standard police procedures and training. The expert may not opine as to what conclusions the jury should draw from the specific facts of the case. As an expert on "human factors" such as perception, reactions, etc., Dr. Ross may testify regarding these factors in general, but may not draw conclusions about how such factors would have influenced or affected plaintiff or the officers.

For example:
- Dr. Ross's opinions that "[O]fficers must frequently make a decision to use a level of force under tense, uncertain, and rapidly evolving circumstances" and "In any use of force encounter including ultimately a lethal force situation, multiple human components are associated with an officer's perception which leads to decision making, and a response" are proper.
- Dr. Ross's opinions that purport to explain what Supreme Court cases or other judicial decisions hold are not proper.
- Dr. Ross's opinions about the "two phases" of the encounter are only proper to the extent they apply to standard police training, and are not opinions about the specific facts of the case and what conclusions should be drawn from those facts. Specifically, his opinion that "When conducting a traffic stop which transitions into a pursuit, lasting over several

2

minutes, officers are trained to anticipate and to be prepared for a multitude of varying scenarios which may include: responding to active subject resistance such as the driver abruptly stopping, bailing from the vehicle and running, refusing to exit the vehicle, the driver accessing a weapon in the vehicle, the driver exiting the vehicle and challenging the officer, charging the officer with or without a weapon, shooting at an officer, and stopping the vehicle and driving away or driving at the officer, to mention a few" is proper, but his opinion that "Operating under this momentary phase of anticipation with the observed components placed the officers on high alert" is not.
- Dr. Ross's opinion that "For about three minutes officers Lafauci and Walczak were engaged in a pursuit with Mr. Ligon who showed an unwillingness to cooperate with instructions to pull over and stop, drove erratically, drove through parking lots, drove through a stop sign, and then abruptly stopped in a residential neighborhood. Such actions posed a danger to the community" is improper.
- Dr. Ross's opinions about teaching officers to "cue into body dynamics and statements made by the suspect" is only relevant if it is standard police training.

## II. DEFENDANTS' *IN LIMINE* MOTIONS

**Motion *in limine* No. 1: To exclude reference to the absence of an MVARS video**

**DENIED IN PART AND GRANTED IN PART.** What probative value of the absence of MVARS footage might provide is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Given the prevalence of recording of police activity by officers, the jury may speculate as to why there is no evidence of such a recording in this case and draw inferences unfavorable to one party or the other. Allowing reference to why there is no video in this case will allow a full presentation of the facts and should not unduly prejudice either party. Moreover, plaintiff's assertion that failure to preserve MVARS video was done in bad faith is speculative and unsupported by any evidence.[1] In the absence of any evidence suggesting Officer Lafauci or Officer Walczak turned off the MVARS system to preclude recording of the shooting, inviting the jury to speculate about a potential link between the absence of MVARS footage and Officer Lafauci's use of force would be unfairly prejudicial.

**Motion *in limine* No. 2: To exclude reference to Officers' blood tests**

**GRANTED.** The evidence is at best marginally relevant. Fed. R. Evid. 401. Officer Lafauci's declination to take a blood test is not relevant to the question of whether Officer Lafauci's use of force was reasonable under the circumstances, which is judged from the

---

[1] For this reason, plaintiff's request for an adverse instruction on this point is denied.

3

1  perspective of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386 (1989).

2  The evidence also falls afoul of Rule 403. The blood test was requested the next day, 3 nearly 14 hours after the incident. Dkt. No. 37, at 4. Sunnyvale Police Department Detectives 4 requested the test as a part of their investigation, the results of which were forwarded to the Santa 5 Clara County District Attorney for evaluation of whether criminal prosecutions of the officers, 6 including the defendant, should be filed. *Id*. at 1. California Highway Patrol policy did not require 7 defendant to submit to a blood test, and the investigating officers apparently saw no reason to 8 compel one. *Id*. at 3–5. Asking the jury to speculate as to Officer Lafauci's reasons for declining a 9 blood test introduces a danger of unfair prejudice that substantially outweighs any limited 10 probative value the evidence might have. Fed. R. Evid. 403. Given the objective standard by 11 which defendants actions are to be evaluated, evidence of the blood test refusal would have 12 minimal probative value and invite prejudicial speculation. There is no evidence that Lafauci was 13 in any way impaired or evidence that his credibility or judgment could have been affected by 14 alcohol or drugs. As such, even if this evidence could be regarded as relevant to support the 15 inference that defendant was intoxicated or otherwise impaired and thus that his testimony should 16 be discredited, its probative value is substantially outweighed by its potentially unfair prejudice, 17 and its tendency to cause confusion or delay and to waste time at trial. Fed. R. Evid. 403. 18 Accordingly, the court grants defendant's motion to exclude any reference by witness or document 19 to the blood test of Officer Walczak, as well any reference to Officer Lafauci's refusal to take the 20 test.[2]

**Motion *in limine* No. 3: To exclude the opinions of Rajeev Kelkar and Tate Kubose**

**GRANTED.** Plaintiff contends that the expert opinions of Drs. Kelkar and Kubose will assist the jury in evaluating the credibility of Officer Lafauci's testimony that plaintiff made eye contact and stared at him in a threatening manner, which contributed to Officer Lafauci's use of force. However, the opinions and testimony of Drs. Kelkar and Kubose are based on re-enactments that took place under different conditions and at a different location than where the

---

[2] For the same reasons, the court also excludes reference to the marijuana depicted in plaintiff's trial exhibit #4. *See* Fed. R. Evid. 402, 403.

4

incident at issue in this case took place.

For example, in their report Drs. Kelkar and Kubose note that there were three street lamps near the area of the incident, as well as eight additional vehicles. Dkt No. 71-6, at 3–4. Yet in the experts' reconstruction, which took place at the California Highway Patrol facility in Redwood City, California, and not at the scene of the incident, the exemplar vehicles were placed away from light poles and other light sources, and no additional vehicles were used. *Id*. at 4. They acknowledge that the photographs attached to their report are for demonstrative purposes only, and are not intended to represent how the human eye would perceive the specific lighting levels on the scene. *Id.* The experts concluded based on the scene photographs that the police vehicle was parked behind plaintiff's vehicle and angled toward the curb, yet the experts make no mention in their report about whether the exemplar police vehicle was parked at an angle during the reconstruction, and indeed it appears from the photographs included in the report that it was not. *See id*. at 4–10. The expert opinions and testimony of Drs. Kelkar and Kubose are offered to show that plaintiff "did not and could not make eye contact with the police officers because of the lights from the police vehicle." *Id*. at 10. However, given the discrepancies between the re-enactment and the scene of the incident, the experts' opinions and testimony do not appear to be the "product of reliable principles and methods" as required under Fed. R. Evid. 702(c).

Nor does it appear to the court that observations regarding visibility like those made by Drs. Kelkar and Kubose require any specialized skill or knowledge. It is unclear what "scientific, technical, or other specialized knowledge" Drs. Kelkar and Kubose bring to bear which "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Plaintiff will undoubtedly testify that there were a number of lights shining on him leading up to his shooting, and the court can see no purpose for the testimony and opinions of Drs. Kelkar and Kubose other than vouching for plaintiff's own testimony that he was unable to make eye contact with defendant. It is for this reason that whatever relevance opinions and testimony based on a speculative re-enactment might have is substantially outweighed by the danger of unfair prejudice—that the jury will credit the experts' testimony solely for the improper purpose of vouching for plaintiff's version of the disputed facts. Fed. R. Evid. 403.

5

Accordingly, because the only purpose of Dr. Kelkar and Dr. Kubose's opinions is to bolster plaintiff's credibility and attack Officer Lafauci's, the court excludes their respective expert opinions.

**Motion *in limine* No. 4: To exclude the opinions of Roger Clark**

**GRANTED IN PART**. As with Dr. Ross (the subject of plaintiff's motion *in limine* #4), Mr. Clark may not provide his opinion on ultimate legal conclusions and may not testify as to what he believes happened in this case. However, he may provide his opinions regarding standard police practices, including his opinions on standard police practices and training that are relevant to the facts of this case, so long as such opinions do not include conclusions regarding the ultimate legal issues in the case or concern credibility.

**Motion *in limine* No. 5: To exclude evidence of medical bills not paid or owed by plaintiff**

**DENIED**. Plaintiff may introduce evidence regarding medical bills in the amounts paid. Absent evidence indicating that bills which have been incurred but have not yet been paid do not reflect the amount that has been reasonably incurred, such bills are also admissible. The reasonable value of necessary medical care, treatment, and services which with reasonable probability will be required in the future are also recoverable.

**Motion *in limine* No. 6: To exclude plaintiff's testimony regarding subjective intent**

**GRANTED IN PART**. Evidence of plaintiff's subjective intent in electing to not pull over when the police attempted to stop him is not relevant to the question of whether a reasonable officer in Officer Lafauci's position would have perceived that plaintiff posed a serious threat of harm. Fed. R. Evid. 401. Officer Lafauci would not have known plaintiff's reasons for not stopping, and such reasons therefore are not relevant to his use of force. It is not disputed that plaintiff did not stop his car when the Officers attempted to pull him over.

However, plaintiff's reasons for acting as he did upon exiting his car at the scene of the incident are relevant. Whereas plaintiff's failure to stop is not disputed, his actions upon exiting his car are. Plaintiff and defendant will offer competing versions of plaintiff's actions between the time plaintiff exited his car and when he was shot by defendant. The jury is to determine whether defendant's use of force was reasonable. This will be based, in large part, on plaintiff's actions.

The jury will hear these competing versions of the incident and choose who to believe. If the jury believes plaintiff's version of what happened after he stopped his car, they may find that Officer Lafauci's use of force was not reasonable under the circumstances. If it accepts defendant's version, it may find his use of force justified. In making this determination, the jury will consider the credibility of the witnesses and their testimony. Plaintiff's subjective intent is relevant to explain his actions, and goes to the disputed factual question of what plaintiff did upon exiting his car. Plaintiff's subjective intent is therefore relevant in that limited way to whether Officer Lafauci's response was reasonable under the circumstances, and is admissible. However, the ultimate issue is whether an *objectively reasonable officer under the circumstances known to the officer at the time* would conclude that there is a fair probability that plaintiff poses an immediate threat of death or serious bodily injury to the officer.

**Motion *in limine* No. 7: To exclude reference to Officer Lafauci's pre-incident and post-incident dreams**

**GRANTED**. The evidence is not relevant. Fed. R. Evid. 401. Officer Lafauci's dreams are not relevant to the question of whether Officer Lafauci's use of force was reasonable under the circumstances, which is judged from the perspective of a reasonable officer on the scene. Moreover, whatever probative value this evidence might have is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

**IT IS SO ORDERED**.

Dated: January 22, 2015

_____
RONALD M. WHYTE
United States District Judge